Good morning. Your Honor, I would like to reserve two minutes. Please do. May it please the Court. My name is Mark Lizarraga. I'm an attorney with the Federal Defender's Office and I represent Mr. Ross. Your Honor, the government offered two bases to justify this particular stop. And the stolen car one went out the window. The district court rejected the stolen vehicle bases, so I'm going to address the intoxicated motorist. This Court's well aware that in order to determine whether there was reasonable suspicion to support a stop, the Court looks at the totality of the circumstances. The Court has said time and again that in looking at the totality of the circumstances, the Court will defer to law enforcement officers special training and experience and permit them to draw reasonable inferences based on that training and experience. Why wasn't it reasonable here to assume there was intoxication? The car had come to a stop. It was no reason to not proceed further. It stayed there for 45 seconds to a minute and then evidently it stalled at some point. The driver was unable to start the car. Someone slouched down in the passenger seat, leans over, starts the car for the person. That's suspicion right there. Then when they make the turn, he follows them and the car weaves out of its assigned lane. So he assumed that they had been drinking. Your Honor. The driver was out drinking and stopped. Turned out not to be the fact. But there was reasonable suspicion, wasn't there? Two of the factors the Court has just noted, the delay at the stop sign and the passenger reaching over to start the car, there's absolutely no evidence in the record that Root, the arresting officer, attached any significance to that. There's absolutely no evidence in the record that Root drew any kind of inferences from that. Now, the prosecutor But the Court did, and that's the point. The evidence was put on and it's the Court who has to decide. And the Court said, I do find there was sufficient information for the officer to make the stop. And he cites those factors. Right, Your Honor. And as the Court's well aware, there was no evidentiary hearing. There was no testimony by Root. For the Court to consider that, they were essentially considering arguments and inference by the prosecutor. As I stated, time and again, this Court has stated it will draw upon inferences from officers based on their training and experience. It's also true that it's an objective test. And if an officer thinks that there's a reasonable suspicion or probable cause, that's not conclusive. It's the totality of the facts and circumstances as weighed by the judge. Right. Exactly, Your Honor. The Court has to look at the totality of the circumstances. The Court will look at the inferences from the officer. But what evidence is there that Root drew any inferences from those facts? There's absolutely no evidence because Root never testified. The only inferences from those facts is the prosecution. And as I stated, the Court has never stated that it's going to defer to inferences based on the training and experience of prosecutors, but it will do it based on the training and experience of law enforcement officers. And you don't have that. The only evidence But if you took out the stop sign hiatus, you basically have someone weaving within a lane early in the morning. Is that what you're left with? The only evidence before this Court that comes from Root, again, there was no evidentiary hearing. The only evidence this Court has is his police report and his state court preliminary hearing transcript. In both of those, Root states, I saw the car weave within its lane, and so I thought that the driver was intoxicated. On cross-examination at the state court preliminary hearing, he was asked, when you approached this car, you approached it with the intent to determine whether or not the person was intoxicated. Yes. So clearly, Root is stating he saw the car weave and he stopped it. Well, the law in this circuit is clear. Unless you have pronounced or protracted weaving within a lane, unless it rises to that level, you do not have reasonable suspicion that a motorist is intoxicated. And all this Court has before it, again, there was no evidentiary hearing. All this Court has before it is Root stating the car weaved within its lane. There's no evidence that this car straddled the double yellow line or that it straddled the fog line or went into the shoulder. There's no evidence that he... Let me interrupt you for one second. I understand the facts that you're putting forth, but you've said now three times there was no evidentiary hearing. Where did all this information come from? It came from the prosecutor's argument. Well, I mean, the prosecutor just stood up and said this stuff with no foundation in the record at all? The prosecutor said that in Root's police report, Root says that... Well, what was the information in the record from which the prosecutor made the argument? There was a police report. And where did that come from? From Root. And who introduced it in evidence? The prosecution. Okay. Well, that's what I'm getting at. You say there was no evidentiary hearing. What was the evidentiary information in the record that the judge drew from, and where did that information come from? What I'm saying, Your Honor, is that the court looked at... Would you answer my question? The court looked at the police report. Where did that come from? From out of the sky? Officer Root, he also looked at a state court preliminary transcript, which also... We're not getting anywhere. We're not getting anywhere. I'm obviously not asking good questions. Who made the motion to suppress? The defense. That's you? Yes. All right. And what did you say in your motion to suppress? Your Honor, I'm arguing what I'm arguing now. Okay. And I requested an evidentiary hearing, and it was denied. Okay. It was denied. What did the prosecution then offer? The prosecution offered Officer Root's police report. Right. And then the prosecutor then inferred, made inferences based on that report. But when the court states, well, there's a delay at the stop sign, and therefore we can infer from that that the driver's intoxicated, that is not an inference made by Root. That is an inference made by the prosecutor. And what the prosecutor says is not evidence. The only evidence the court has here from Root is Root stating he saw the car weave within his lane. Let me say, here's what the court said for denying the evidentiary hearing. We have adequate briefing submittals, including reports, preliminary examination transcripts, and, of course, now the information obtained from the trial. What more, I mean, you could always have more, of course. An evidentiary hearing would always be preferable. But isn't that a sufficient foundation or basis for the judge to make a determination? Well, I don't think so. I think that you needed to have an evidentiary hearing to actually see what Root, when Root was questioned at trial, he wasn't examined with the intention to elicit testimony relevant to the Fourth Amendment suppression. At that time, the suppression motion was dead. We were at trial. We weren't asking those types of questions. Now, he did reveal some information relevant to the Fourth Amendment. And the court relied upon that in the second motion to suppress hearing. What I'm getting at is I didn't see anything in your brief where you were making an issue out of being denied an evidentiary hearing. Is that an issue on appeal, that you were denied an evidentiary hearing? Yes. Where did you identify that? I identified it in my gray brief. In your gray brief? Yes. That's too late. Too late, unfortunately. You see, if you're going to identify an issue, it has to be in your opening brief. And it isn't in your opening brief. Well, Your Honor, I identified in my gray brief in response to the government's argument that there was sufficient evidence to deny. I don't mean this as criticism, but as a practice point, if you intend to perfect an issue on appeal, you have to state it in your opening brief. Gray brief is to respond to the government's brief, not to bring up new issues. Anyway, go ahead. Your Honor, very quickly, if the courts, even assuming the argument of the courts going to consider those factors and look at that in the totality of the circumstances, the long pause of 45 seconds to a minute is not significant. There's no evidence that that pause wasn't in response to a red light. Well, how about the fact that the car stalled and the driver couldn't get it started again and that the passenger had to lean over and start the car? I mean, that's a little unusual, isn't it? Your Honor, the fact that the engine stalled makes the delay at the stop sign insignificant. Cars stall all the time at stop signs and are delayed. The fact that the passenger would reach over and start the car and then after that the officer sees the car weave insignificantly with his lane, under the totality of the circumstances, does not rise to the level of reasonable suspicion. Isn't it a fair inference that there's something the matter with the driver? The driver doesn't seem to be able to get the car started and then as soon as the car starts, the driver weaves. Why isn't it a fair inference that the driver may have some impairment that caused the driver's inability to start the car and then made the car weave after the car started driving? Because there's no evidence that the weaving was significant, Your Honor. There's no evidence, as I stated, that it was straddling the double yellow line, going into the shoulder. There's no evidence that it made a broad turn. This Court's decision in Fernandez-Castillo, this Court looked at three factors. There was a reliable report of erratic driving. The officer saw the car weave appreciably within its lane and the officer noticed that the driver was driving close to the steering wheel. He inferred from that that the driver might be intoxicated.  This Court stated those two factors standing alone would most likely not rise to reasonable suspicion. That's exactly what you have here. You actually have yes, less, because the weaving in Fernandez-Castillo was appreciably. The weaving here is clearly insignificant. If those two factors in Fernandez-Castillo won't rise to reasonable suspicion, then those two factors here cannot rise to reasonable suspicion. But you treat the evidentiary evidence of the driver's inability to start the test, the evidence that was the police report, because it's not testimony, live testimony, you treat it as if it doesn't exist and it's not something that should enter into the district court's consideration. No, Your Honor. I mean, you're not just emphasizing the weaving, but the rest, these other factors are in there as well. It was 1 o'clock in the morning. I mean, this was not high noon. This was, you know, this was a... Your Honor, will the Court allot me a couple more minutes? I'll tell you what, your time is up, but we'll give you two minutes to rebut. Thank you. We've asked you a lot of questions. Thank you, Counsel. We'll hear from the other side. You've heard the argument. The argument is that there was no really wild weaving. It was just some movement inside a lane and then Fernandez-Castillo controls. I'm sorry. Identify yourself. Yes. May it please the Court, Bob Wright for the United States. All right. And taking what Your Honor just said, if all we had in this case was the report by the officer of weaving, it would not be this case. It would be a different case. And frankly and candidly, had that been all we had, I myself in prosecuting the case would have requested the Court to hold an evidentiary hearing to go into the details on the weaving. Because I've certainly, I've read your Court's opinions as well as other opinions on weaving cases, and there does tend to be a great deal of interest and detail about the degree of weaving. But that's not this case at all. What we have in response to another question just asked of opposing the defense in the case, we have a number of absolutely undisputed facts on the record. We have the long stop. The engine dies, which by itself, of course, means nothing. The car stalls. Fine. But then we have the passenger leaning over with both hands to restart the car. And we have all of this seen by Officer Root. And Officer Root has no interest in this vehicle, and that's undisputed, until he observes these taken together and collectively. Your opponent says that Officer Root attached absolutely no significance to the long stop or the passenger restarting the car in connection with the stop, that the only thing that the officer used was the weaving. Well, I just don't think that's a correct recitation of the record, Your Honor. He prepared his, Officer Root prepared his sheriff's report contemporaneously with the stop and the arrest and the search in this case. And right there, and I believe in the very first paragraph in the record, it appears, excerpts of record at page 285, he sets out the long stop. I think he even puts a time estimate on it, around 45 seconds to a minute. He says the engine dies, and he sees that. And he sees the passenger reach over with both hands to restart the vehicle. And then on the next page of the report, at page 286, he actually discusses this with the defendant, Mr. Ross, and says to him later on in the evening, I saw you reach over with both hands to restart the car. And then, of course, Mr. Ross gives his answer to that question. So I think that he absolutely does, and it's shown by the record, attach significance to those events. He also does something very important. He calls in a check on the license plate of the vehicle. And to perhaps draw a lightning bolt or two, I'd like to turn just for a moment from the suspicion of driver impairment, which I think is clearly supported by the undisputed facts in the record. A unimpaired driver just simply reaches over, turns the key, and restarts the vehicle. If the driver can't restart the vehicle, such as the passenger reaches over to restart the vehicle, that does suggest the possibility of driver impairment. And what the courts, this court and the Supreme Court, have said, innocent conduct doesn't have to be ruled out. There can still be the possibility of innocent conduct. The question, though, is it possible to form a reasonable suspicion based on the acts we've had? And I think we clearly have that here. Let me just change tack slightly, and that is, is any of this vitiated by the fact that the driver gave consent to the search, or is that tainted because of the initial stop? In other words, if you were to assume the initial stop was without reasonable suspicion, does the driver's consent do anything to change the legal calculus? By itself, I would be concerned about taking that position. But there were some other facts, because we did present the argument that, well, we think, of course, the stop was entirely appropriate, and really a good officer should have made the stop under these circumstances to see what was what. Though we have a number of things in addition to this consent. Before the drivers even asked for consent to search, the first thing officers do when they stop vehicles, I think we all know, many of us from personal experience, may I see your license? Well, the driver had no license. Ask the passenger. The passenger has no license. The next thing that happens is the passenger gives his name but can't remember his birth date. Almost all of us, I think, can remember our birth dates. On a good day. He calls in that information, and it comes back, the passenger's actually given a real name, but the officer notices that the passenger looks quite a bit older than the real person, Robert Dale Sullivan's name. And we all know that happened both from the sheriff's report and the dispatch tape that the defendant put in evidence on the motion. And then the defendant actually gives Officer Root a reason why he gave him a false name. It's because, well, I'm on parole, and there may be an arrest warrant out for me. It's after all that has happened that Officer Root then asks the passenger for consent to the search. She gives the consent, and then the evidence is found. And I would submit, Your Honor, a rather long answer to your question, that putting all those facts together, I think even if you had a tainted stop, you would meet the test for what many people refer to as attenuation. The first factor there being closeness in time, that would not support attenuation. Second factor, intervening circumstances, I think most definitely would. And the third and most important factor, the degree of wrongfulness, if you will, of the tainted stop. Why, I would think here that everybody would agree that if the court did find the stop fell a tad short of reasonable suspicion, that would be a very close call and clearly no, certainly, bad motive here or anything like that. If I could, Your Honor, though, I'd like to have a couple of comments there on the stolen vehicle suspicion. You really want to pursue that? Yes, Your Honor. Go ahead if you'd like to. I would like to, Your Honor, because I disagree that the district court made a factual finding on that the second time around. I honestly think what the court did was reach some type of legal conclusion, perhaps that that simply wasn't necessary given the strength of the facts supporting a stop for impairment. And also... The court says, I am not going to find in this case that the stop was justified as a possible stolen vehicle. Yes, I agree. And I think I pointed that out in my brief as well, Your Honor. But... So why are we talking about it? So why are you bringing it up? Because, as I said in the brief, that this decision could be affirmed on any ground supported by the record. I do think suspicion of stolen car, Your Honor, and with all respect to the district judge, a wonderful judge, when we have a passenger reaching over with two hands to restart the car. The car turns the corner. The right rear window is broken out. And all the time the car is driving, the passenger is reclined in the seat, which could certainly be an indication of furtive conduct, not wanting to be seen. I think objectively that does support the stop of a car to suspect that it could be stolen, to verify the ownership of the car. Can a reclining passenger who helps out the driver start a car rises to the level of suspicion of a stolen car? When the plates come back clean? Everything's clean. I guess I'm stunned by that, that the United States would go there. You're drawing lightning bolts. Well, all right. And plus the broken window. The window was broken, and its undisputed officer Ruth saw that when it turned. And on the thing about the plate coming back clean, and I did want to draw that out, I would assert to the court that the fact that the people have changed the plate on the car should not, if we've reached a level of reasonable suspicion, should not lower that level to now the officer no longer has the reasonable suspicion he once had to still stop it. I mean. But it was the same kind of car. It could be stolen. It was taken from the car it belonged. It was taken from one car and was put on another car. They were both Fords, weren't they? Maybe not the same model, but. This was a 1986 T-Bird. The plates were taken from the mother of the driver's car, Tamara Sullivan's car. That was an 84 T-Bird. And indeed, when Officer Ruth, and I'll submit to you the reason he calls it that plate check is because, well, you know, the long stop, the passenger reaching over the broken window could be stolen. It does come back clean. But I don't see how. Counsel, your time has expired. Thank you, Your Honor. Thank you very much. You may respond. Your Honor, if I could just briefly state and answer the Justice's question. Your Honor stated that this stop or this whole conduct occurred after 1 a.m. The prosecutor, again, you have no evidence in the record from Ruth or no expert testimony, but the prosecutor opines that because it's early in the morning that everyone knows that there's more drunks on the road. But there's absolutely no evidence of that fact other than his own opinion. Now, this court in Collin, the case involved much more egregious weaving within the lane. The weaving within the lane occurred after 2 o'clock in the morning. This court still found that that weaving after 2 o'clock in the morning did not rise to the level of reasonable suspicion of driver intoxication. This court noted in Collin that it was basing its decision partly on the fact that when the officer stops the car, the officer does absolutely nothing consistent with an officer investigating a DUI. You have that same circumstance here. After Ruth stops this car, he does absolutely nothing consistent with an officer investigating a DUI. Well, but this is because he also believes that it's a stolen car. Are we going to get into that? I mean, that's what he was checking out. And guess what? Well, did he do anything? Was the car stolen? The car was stolen. Well, that's what he was checking out. I mean, you can't do everything at once. Well, Your Honor, also, there's no evidence at all that he does anything consistent with an officer investigating a stolen car. When he approaches the car, does he ask her, is this your car? Whose car is it? Does he take down the VIN number? Does he even ask for the registration paperwork? He asked for the driver's license, didn't he? He asked her for her driver's license. She didn't have it, did she? Right. No. So she's driving without a license right off the bat. Right. He asked the other person for identification. She doesn't have it. And he gave two different names. Right, Your Honor. But prior to that, he stops this car saying he's approaching it for a DUI. He asked for her name. He's approaching it for two reasons, counsel. He thinks it's a stolen car. It turns out he was right. Well, Your Honor, I would say just as this court looked at the officer's actions in calling to say the officer did nothing consistent with an officer pulling a car over for DUI, you have that same circumstance here. Did he ask for registration paperwork? If you're suspicious a car is stolen, perhaps when you approach it, you might ask, is this car yours? Where's the registration paperwork? He didn't do any of that. You have 15 seconds if you'd like to sum up. Your Honor, I'll submit it to the court and I thank you. Thank you both. Case for Sargon is ordered submitted. We'll call the third case on the calendar.
judges: Meskill, Trott, McKeown